## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

FABIO ACOSTA, on behalf of himself, and
others similarly situated,

                 Plaintiff,

     v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,

               Defendant.

Case No.: 0:15-cv-62099-KMW

**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, Fabio Acosta, individually and on behalf of a class of persons similarly situated (the "Class" or "Class Members"), brings this class action against Defendant, Experian Information Solutions, Inc. ("Experian").

## PRELIMINARY STATEMENT

1.       T-Mobile USA, Inc. ("T-Mobile"), which primarily provides cellular phone services to consumers, processes the credit applications of customers and potential customers through Experian, an information services group which provides, among other things, credit check services to corporations.

2.       Experian failed to protect the sensitive data of T-Mobile's customers and individuals who applied for credit with T-Mobile.

3.       On October 1, 2015, Experian disclosed that 15 million T-Mobile customers and prospective customers who applied for credit with T-Mobile had had their sensitive data compromised in a massive hack on Experian's servers.  The hack affected 15 million persons who had applied for credit with T-Mobile between September 1, 2013 and September 16, 2015.

4.      Plaintiff is a consumer harmed by Experian's substandard security practices. Plaintiff seeks to represent himself as well as a Class of all other consumers similarly situated who applied for credit with T-Mobile between September 1, 2013 and September 16, 2015.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in light of the Fair Credit Reporting Act claims alleged below.  Jurisdiction is also founded upon 28 U.S.C. § 1332(d) (Class Action Fairness Act) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and the requisite diversity of citizenship.

6.      Venue is appropriate pursuant to 28 U.S.C. § 1391.  A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District.

7.      This court has personal jurisdiction over Defendant because Defendant has substantial and continuous contacts with this forum, and the events giving rise to this action arose out of those contacts.

## PARTIES

8.      Plaintiff Fabio Acosta ("Acosta") is a citizen and resident of Pompano Beach (Broward County), Florida.  In or about February 2015, Plaintiff purchased a cellular phone from T-Mobile, and in doing so was subjected to a credit check by Experian.

9.      Defendant Experian Information Solutions, Inc., is an Ohio corporation with its principal offices located at 475 Anton Blvd., Costa Mesa, California 92626.

## STATEMENT OF COMMON FACTS

10.     On or about October 1, 2015, T-Mobile was notified by Experian, the vendor that processes T-Mobile's credit applications, that Experian had experienced a data breach.

11.     Experian maintains a historical record of the applicant data used by T-Mobile to make credit decisions. The data provides the record of the applicant's credit application with T-Mobile and is used to assist with credit decisions and to respond to questions from applicants about the decision on their credit application. The data is required to be maintained for a minimum period of 25 months under credit laws.

12.     The hacker acquired the records of approximately 15 million people, including new applicants requiring a credit check for service or device financing from September 1, 2013, through September 16, 2015.

13.     These records include personally identifiable information ("PII" or "Confidential Information") such as name, address and birthdate, as well as encrypted fields with Social Security number and ID number (such as driver's license or passport number), and additional information used in T-Mobile's credit assessment.  Experian has determined that this encryption may have been compromised.

14.     This is not the first time data maintained by Experian has been breached.  An attack on an Experian subsidiary that began before Experian purchased it in 2012 exposed the Social Security numbers of 200 million Americans.

15.     In addition, Experian suffered a prior data breach involving T-Mobile customer data in 2013.  Specifically, in April 2013 Experian acquired Decisioning Solutions, an identity-proofing and authentication company. Later that year, in December 2013, the Decisioning Solutions entity suffered a data breach in which unauthorized individuals gained access to a file

stored on servers owned by Experian.  The file contained Social Security numbers and driver's

license numbers of T-Mobile customers.

16.     Recent reporting illustrates that data security has become, at best, a subsidiary

consideration for Experian:

> Over the past week, KrebsOnSecurity has interviewed a half-dozen security
> experts who said they recently left Experian to find more rewarding and
> less frustrating work at other corporations. Nearly all described Experian as
> a company fixated on acquiring companies in the data broker and analytics
> technology space, even as it has stymied efforts to improve security and
> accountability at the Costa Mesa, Calif. based firm.
>
> Jasun Tate worked for a year until April 2014 as a chief information
> security officer delegate and risk consultant at Experian's government
> services and e-marketing business units. Tate said he and several of his
> colleagues left last year after repeatedly running into problems getting buy-
> in or follow-up support for major projects to beef up security around
> Experian's growing stable of companies handling sensitive consumer and
> government data.
>
> "What the board of directors at Experian wanted security-wise and the
> security capabilities on the ground were two completely different things,"
> Tate said. "Senior leadership there said they were pursuing a very
> aggressive growth-by-acquisition campaign. The acquisition team would
> have a very strict protocol on how they assess whether a business may be
> viable to buy, but the subsequent integration of the business into our core
> security architecture was just a black box of magic in terms of how it was
> to be implemented. And I'm not saying successful magic at all."
> . . . .
>
> Not long after it acquired . . . Decisioning Solutions in April 2013,
> Experian folded the company into its Decision Analytics platform — a unit
> which provides credit and noncredit data, customer analytics and fraud
> detection to lenders, cable and satellite companies, telecommunications
> firms, third-party debt collectors, utilities and to state and federal
> government entities.
>
> Within hours of the latest T-Mobile breach news hitting the wires,
> KrebsOnSecurity was contacted by an anonymous source who sent this
> author a Web link that, when clicked, opened up a support ticket within that
> Decision Analytics platform in the United Kingdom — *with absolutely no*
> *authentication needed*. That support ticket I viewed appears to have been
> filed by someone in an office cube at Experian's data center in Costa Rica

who was requesting hardware support for a component of the company's Global Technology Services division.

. . . .

After [the former Chief Information Officer] was lured away to take the CIO job at the Bank of England, many of the major in progress projects designed to bake security into all aspects of Experian's business ground to a halt, the former employees said on condition of anonymity. Core members of the Experian security team soon began seeking employment elsewhere. A year after [the CIO's] departure, morale suffered and the staff of the company's [security operations center] had dwindled from nearly 30 to about a dozen.

"We had a period of time there where security was viewed in a positive light, and things weren't being swept under the rug for the sake of uptime" the employee said. "[The CIO] left and it kind of went the opposite direction. Once the leadership changed, the focus changed to controlling costs and not taking systems down for maintenance, and investments started disappearing from a lot of areas. We were in the middle of putting into operation certain tools to do next-generation detection of [cyber] threats, but we weren't able to get many of them out into production. And that's how Experian wound up where they are now."[1]

17.     Despite these obvious lapses, Experian posts its privacy policy on its website, which states, in relevant part: "Experian is held accountable for its information use by consumer privacy expectations and by laws and industry codes established by government entities and industry organizations around the world.  Among the laws and industry self-regulatory codes with which Experian complies in the United States are: The Fair Credit Reporting Act."[2]  The policy further states, "We use a variety of security systems to safeguard the information we maintain and provide. . . . . We comply with all laws and applicable self-regulatory

---

[1] Brian Krebs, *At Experian, Security Attrition Amid Acquisitions*, KREBSONSECURITY.COM, Oct. 8, 2015, http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/.

[2] Experian, *Accountability for Information Use*, http://www.experian.com/privacy/accountability.html (last visited Oct. 22, 2015).

guidelines. . . .  We comply with all contractual restrictions placed on information provided to Experian."[3]

18.     Thus, Experian was aware of and embraced its duty to reasonably safeguard class members' data.

19.     Plaintiff has already experienced suspicious activity related to the compromised data.  For example, fraudulent transactions and/or fraudulent home loan applications have already begun to appear on Plaintiff's and other class members' credit reports.

20.     Indeed, it is already being reported that T-Mobile customer data from the Experian breach is being sold online to the criminal underground.  *See* FIERCEWIRELESS.COM, *Report: T-Mobile customer data from Experian breach may already be up for sale*, http://www.fiercewireless.com/story/report-t-mobile-customer-data-experian-breach-may-already-be-sale/2015-10-05 (last visited Oct. 6, 2015).

21.     As a direct and proximate result of Defendant's actions and omissions in disclosing and failing to protect Plaintiff's private personal information, Plaintiff and those similarly situated have been placed at a substantial risk of harm in the form of identity theft and have incurred and will incur actual damages in an attempt to prevent or at least mitigate identity theft.  They have suffered or are at increased risk of suffering from:

- the loss of the opportunity to control how their PII is used;

- the diminution in the value and/or use of their PII, entrusted to Defendant for the purpose of obtaining cellular telephone services with the understanding that

---

[3] Experian, *Upholding Our Information Values*, http://www.experian.com/privacy/information_values.html (last visited Oct. 22, 2015).

Defendant and its employees/managers would safeguard their PII against theft and not allow access and misuse of their PII by others;

- the compromise, publication and/or theft of their PII;

- out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial and medical accounts;

- lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity and health care/medical data misuse;

- costs associated with the inability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets;

- unauthorized use of compromised PII to open new financial and/or health care or medical accounts;

- the continued risk to their PII, which remains in the Defendant's possession and is subject to further breaches as long as Defendant fails to undertake appropriate measures to protect the PII in its possession;

- current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of the Class members and their families/spouses/dependents.

## CLASS ALLEGATIONS

22.     Plaintiff brings this action pursuant to Rule 23(a), (b)(2), (b)(3), and (c)(4) of the

Federal Rules of Civil Procedure.  He brings this action on his own behalf and on behalf of all

other similarly situated persons.  Plaintiff is informed and believes there are thousands of

members in the proposed Class.  The proposed Class consists of:

> **All persons throughout the United States who were customers
> or potential customers of T-Mobile USA, Inc., and for which
> Experian performed a credit check for service or device
> financing from September 1, 2013, through September 16,
> 2015**.

23.     The members of the putative class, estimated at 15 million, are so numerous that

joinder of individual claims is impracticable.  Members of the class can be readily identified

through Experian's and T-Mobile's records.

24.     There are significant questions of fact and law common to the members of the

class.  These issues include:

a.     Whether Experian failed to establish appropriate administrative, technical

and physical safeguards to ensure the security and confidentiality of records to protect

against known and anticipated threats to security;

b.     Whether the security provided by Experian was satisfactory to protect

customer information as compared to industry standards;

c.     Whether Experian misrepresented or failed to provide adequate

information to customers regarding the type of security practices used;

d.     Whether Experian's conduct was intentional, willful or negligent;

e.     Whether Experian violated any and all statutes and/or common law listed

herein;

f.      Whether the putative class suffered damages as a result of Experian's conduct or omissions; and

g.      Whether class members are entitled to injunctive, declarative and monetary relief as a result of Experian's conduct.

25.     Plaintiff's claims are typical of the claims of the putative class.  Plaintiff and all members of the putative class have been adversely affected and damaged in that Experian failed to adequately protect their private information to the detriment of Plaintiff and the putative class.

26.     The proposed class representative will fairly and adequately represent the putative class because he has the class members' interest in mind, his individual claims are co-extensive with those of the class, and because he is represented by qualified counsel experienced in class action litigation of this nature.

27.     A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative class is impracticable.  Many members of the class are without the financial resources necessary to pursue this matter.  Even if some members of the class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed.  Individual litigation increases the time and expense of resolving a common dispute concerning Experian's actions toward an entire group of individuals.  Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale and comprehensive supervision over the entire controversy by a single judge in a single court.

28.     The putative class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Experian has acted on grounds generally applicable to the putative

class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the class.

29.     The putative class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to class members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

30.     The litigation of Plaintiff's claims is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

31.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records and through publication.

**COUNT I**
*Negligence*

32.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 – 31 as though fully set forth herein.

33.     Experian owed a duty to Plaintiff and all class members to use security practices that would protect their Confidential Information provided to Experian and T-Mobile against the very sort of attack that occurred here.

34.     Experian breached the aforementioned duty when it failed to use security practices that would protect the Confidential Information provided to it by consumers.

35.    The law also imposes an affirmative duty on Defendant to timely disclose the theft of the PII so that Class Members could be vigilant in attempting to determine if any of their accounts or assets has been stolen.

36.    Through its failure to provide timely and clear notification of the data breach to consumers, Defendant negligently prevented Class Members from taking meaningful, proactive steps to investigate possible identity theft.

37.    As a direct and proximate cause of failing to use appropriate security practices, Experian's system was hacked, causing Plaintiff's and class members' PII to be disseminated to unauthorized individuals.

38.    The breach of the security system caused direct and substantial damages to Plaintiff and class members, as well as the possibility of future harm through the dissemination of private information and possibility of identity theft.

39.    By engaging in the foregoing acts and omissions, Experian committed the common law tort of negligence.  For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to Class Members' PII; and failing to provide Class Members with timely and sufficient notice that their sensitive PII had been compromised.

40.    Neither Plaintiff nor the other Class Members contributed to the data breach or the subsequent misuse of their PII as described in this Complaint.

41.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and every member of the Class has been put at risk of identity theft and has an obligation to

mitigate damages through credit monitoring services.   Defendant is liable to each and every member of the Class for the reasonable costs of future credit monitoring services.  Defendant is also liable to those Class Members who have directly sustained damages as a result of the identity theft.

## COUNT II
### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (15 U.S.C. § § 1681, et seq.)

42.    Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 – 31as though fully set forth herein.

43.    Pursuant to15 U.S.C. § 1681a(f), a "consumer reporting agency" includes any person which, for monetary fees or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing "consumer reports" to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

44.    Pursuant to15 U.S.C. § 1681a(d)(1), a "consumer report" is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used, expected to be used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U.S.C. § 1681b.

45.    "Consumer credit information" includes, *inter alia*, a person's name, identification number (*e.g.*, Social Security number), marital status, physical address and contact

information, educational background, employment, professional or business history, financial

accounts and financial account history (*i.e.*, details of the management of the accounts), credit

report inquiries (*i.e.*, whenever consumer credit information is requested from a credit reporting

agency), judgments, administration orders, defaults, and other notices.

46.     FCRA limits the dissemination of "consumer credit information" to certain well-

defined circumstances and no others. 15 U.S.C. § 1681b(a).

47.     At all relevant times, Experian was (and continues to be) a consumer reporting

agency under FCRA because, on a cooperative, nonprofit basis and for monetary fees, it

regularly (i) received, assembled and/or evaluated Plaintiff's and class members' "consumer

credit information" protected by FCRA for the purpose of furnishing consumer reports to third

parties, and (ii) used the means and facilities of interstate commerce to prepare, furnish and

transmit consumer reports containing Plaintiff's and class members' consumer credit information

to third parties (and continues to do so).

48.     As a consumer reporting agency, Defendant was (and continues to be) required to

identify, implement, maintain and monitor the proper data security measures, policies,

procedures, protocols, and software and hardware systems to safeguard, protect and limit the

dissemination of consumer credit information in its possession, custody and control, including

Plaintiff's and class members' consumer credit information, only for permissible purposes under

FCRA. *See* 15 U.S.C. § 1681(b).

49.     By its wrongful actions, inaction and omissions, want of ordinary care, and the

resulting security breach, Defendant willfully and recklessly violated 15 U.S.C. § 1681(b), 15

U.S.C. § 1681a(d)(3), 15 U.S.C. § 1681b(a);(g), and 15 U.S.C. § 1681c(a)(6) (and the related

applicable regulations) by failing to identify, implement, maintain and monitor the proper data

security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and class members' consumer credit information.

50.     Defendant's wrongful actions, inaction and omissions, and want of ordinary care, in turn, directly and proximately caused the security breach which, in turn, directly and proximately resulted in the wrongful dissemination of Plaintiff's and class members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's willful and reckless FCRA violations also have prevented it from timely and immediately notifying Plaintiff and class members about the security breach which, in turn, inflicted additional economic damages and other actual injury and harm on Plaintiff and class members.

51.     Defendant's wrongful actions, inaction, omissions, and want of ordinary care, and the resulting security breach, directly and proximately caused Plaintiff and class members to suffer economic damages and other actual injury and harm, and collectively constitute the willful and reckless violation of FCRA. Had Defendant not engaged in such wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and class members' consumer credit information would not have been disseminated to the world for no permissible purpose under FCRA, and used to commit identity fraud.  Plaintiff and class members, therefore, are entitled to declaratory relief (as set forth below), injunctive relief (as set forth below), and compensation for their economic damages, and other actual injury and harm in the form of, *inter alia,* (i) the lost intrinsic value of their privacy, (ii) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (iii) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (iv) statutory damages of not less than $100, and not more than $1000, each, under 15 U.S.C. § 1681n(a)(1).

52.     Plaintiff and class members also are entitled to recover punitive damages, under 15 U.S.C. § 1681n(a)(2), and their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681n(a)(3).

## COUNT III
### *NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING* ACT
**(15 U.S.C. § § 1681, et seq.)**

53.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 – 31 as though fully set forth herein.

54.     In the alternative to Count II, by its wrongful actions, inaction and omissions, want of ordinary care, and the resulting security breach, Defendant negligently or in a grossly negligent manner violated 15 U.S.C. § 1681(b), 15 U.S.C. § 1681a(d)(3), 15 U.S.C. § 1681b(a);(g), and15 U.S.C. § 1681c(a)(6) (and the related applicable regulations) by failing to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and class members' consumer credit information.

55.     Defendant's wrongful actions, inaction and omissions, and want of ordinary care, in turn, directly and/or proximately caused the security breach which, in turn, directly and proximately resulted in the wrongful dissemination of Plaintiff's and class members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's willful and reckless FCRA violations also have prevented it from timely and immediately notifying Plaintiff and class members about the security breach which, in turn, inflicted additional economic damages and other actual injury and harm on Plaintiff and class members.

56.      It was reasonably foreseeable to Defendant that its failure to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and

software and hardware systems to safeguard and protect Plaintiff's and class members' consumer credit information would result in a security lapse, whereby unauthorized third parties would gain access to, and disseminate, Plaintiff's and class members' consumer credit information into the public domain for no permissible purpose under FCRA.  Defendant's wrongful actions, inaction, omissions, and want of ordinary care, and the resulting security breach, directly and proximately caused Plaintiff and class members to suffer economic damages and other actual injury and harm, and collectively constitute the negligent violation of FCRA.  Had Defendant not engaged in such wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and class members' consumer credit information would not have been disseminated to the world for no permissible purpose under FCRA, and used to commit identity fraud.  Plaintiff and class members, therefore, are entitled to declaratory relief (as set forth below), injunctive relief (as set forth below), and compensation for their economic damages, and other actual injury and harm in the form of, *inter alia,* (i) the lost intrinsic value of their privacy, (ii) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, and (iii) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

57.     Plaintiff and class members also are entitled to recover their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681o(a)(2).

## COUNT IV
### *DECLARATORY RELIEF*

58.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 – 31 as though fully set forth herein.

59.     Pursuant to the Declaratory Judgment Act, Plaintiff and class members request the Court to enter a judgment declaring, *inter alia*, (i) Defendant owed (and continues to owe) a legal duty to safeguard and protect Plaintiff's and class members' confidential and sensitive consumer credit information, and to timely notify them about any security breach, (ii) Defendant breached (and continues to breach) such legal duties by failing to safeguard and protect Plaintiff's and class members' confidential and sensitive payment consumer credit information, and (iii) Defendant's breach of its legal duties directly and proximately caused the security breach, and the resulting damages, injury, and harm suffered by Plaintiff and class members.

## COUNT V
### *INJUNCTIVE RELIEF*

60.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 – 31 as though fully set forth herein.

61.     Defendant Experian's wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach have caused (and will continues to cause) Plaintiff and class members to suffer irreparable harm in the form of, *inter alia*, economic damages and other injury and actual harm in the form of, *inter alia*, (i) actual identity theft and identity fraud, (ii) invasion of privacy, (iii) loss of the intrinsic value of their privacy, (iv) breach of the confidentiality of their consumer reports and consumer credit information, (v) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (vii) the imminent, immediate, and continuing increased risk of ongoing identity theft and identity fraud.  Such irreparable harm will not cease unless and until enjoined by this Court.

62.     Plaintiff and class members, therefore, are entitled to injunctive relief and other appropriate affirmative relief including, *inter alia*, an order compelling Defendant Experian to, *inter alia*, (i) notify each person whose consumer credit information was exposed in the security breach, (ii) provide credit monitoring to each such person for at least six years, (iii) establish a fund (in an amount to be determined) to which such persons may apply for reimbursement of the time and out-of-pocket expenses they incurred to remediate identity theft and/or identity fraud (*i.e.*, data breach insurance), from September 16, 2015, forward to the date the above-referenced credit monitoring terminates, and (iv) discontinue its wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach.

63.     Plaintiff and class members also are entitled to injunctive relief requiring Defendant Experian to implement and maintain data security measures, policies, procedures, controls, protocols, and software and hardware systems, including, *inter alia*, (i) engaging third-party security auditors/penetration testers and internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's computer systems on a periodic basis, (ii) engaging third-party security auditors and internal personnel to run automated security monitoring, (iii) auditing, testing, and training its security personnel regarding any new or modified procedures, (iv) conducting regular database scanning and security checks, (v) regularly evaluating web applications for vulnerabilities to prevent web application threats, and (vi) periodically conducting internal training and education to inform internal data security personnel how to identify and contain data security lapses.

64.     If an injunction is not issued, Plaintiff and class members will suffer irreparable injury in the event Experian commits another security lapse, the risk of which is real, immediate, and substantial.

65.     The hardship to Plaintiff and class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant suffers another massive security lapse, Plaintiff and class members will likely again incur millions of dollars in damages. On the other hand, and setting aside the fact that Defendant has a pre-existing legal obligation to employ adequate customer data security measures, Defendant's cost to comply with the injunction they are already required to implement is relatively minimal.

66.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another security lapse, thereby eliminating the damages, injury, and harm that would be suffered by Plaintiff, class members, and the millions of consumers whose confidential and sensitive consumer credit information would be compromised.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff, for himself and class members, respectfully requests that (i) this action be certified as a class action, (ii) Plaintiff be designated the Class Representative, and (iii) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, for himself and class members, further requests that upon final trial or hearing, judgment be awarded against Defendant, in Plaintiff's favor for:

(i) statutory and actual damages under the Fair Credit Reporting Act in an amount to be determined by the trier of fact;

(ii) punitive damages in an amount to be determined by the trier of fact;

(iii) declaratory and injunctive relief (as set forth above);

(iv) attorneys' fees, litigation expenses and costs of suit incurred through the trial and any appeals of this case; and

(v) such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of class members, respectfully demands a trial by

jury on all of his claims and causes of action so triable.

Dated:  October 23, 2015          By:    /s/ John Yanchunis     
                                     JOHN YANCHUNIS, ESQ.
                                     Florida Bar No. 324681
                                     jyanchunis@forthepeople.com
                                     MARCIO W. VALLADARES
                                     Florida Bar No. 0986917
                                     mvalladares@forthepeople.com
                                     PATRICK A. BARTHLE II
                                     Florida Bar No. 0099286
                                     pbarthle@forthepeople.com
                                     **MORGAN & MORGAN COMPLEX LITIGATION GROUP**
                                     201 North Franklin Street
                                     7th Floor
                                     Tampa, Florida  33602
                                     Telephone:  (813) 223-5505
                                     Facsimile:  (813) 223-5402

                                     Edward A. Wallace
                                     Mark R. Miller
                                     Amy E. Keller
                                     **WEXLER WALLACE LLP**
                                     55 West Monroe Street, Suite 3300
                                     Chicago, IL 60603
                                     (312) 346-2222

                                     Gary E. Mason
                                     Esfand Y. Nafisi
                                     Benjamin Branda
                                     **WHITFIELD BRYSON & MASON LLP**
                                     1625 Massachusetts Avenue, NW, Ste. 605
                                     Washington, DC 20036
                                     (202) 429-2290

                                     Gregory F. Coleman
                                     Mark E. Silvey
                                     Lisa A. White
                                     **GREG COLEMAN LAW PC**

First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0090

*Attorneys for Plaintiff*